```
                    United States District Court
                       District of Massachusetts
 _____
                                    )
 First State Insurance Company,     )
                                    )
         Plaintiff,                 )
                                    )
         v.                         )
                                    )   Civil Action No.
 XTRA Corporation, et al.,          )   21-11855-NMG
                                    )
         Defendants.                )
 _____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This insurance coverage dispute concerns the duty, if any, of plaintiff insurer First State Insurance Co. ("First State" or "plaintiff") to indemnify defendant insureds XTRA Corp., XTRA Intermodal, Inc., X-L-Co, Inc. and XTRA LLC ("the XTRA companies" or "defendants") under eight excess umbrella insurance policies issued by First State 40 plus years ago ("the Policies").[1]  Pending before the Court is First State's motion to remand this action to state court (Docket No. 14) and the XTRA companies' motion to transfer it to the United States District Court for the Southern District of Illinois (Docket No. 13). For the reasons that follow, plaintiff's motion will be denied and defendants' motion will be allowed.

---

[1] Except where the individual identity of an XTRA company is relevant, the Court will refer to them collectively as "the XTRA companies".

**I.   Background**

    **A. The Parties**

First State is a Connecticut corporation with its principal place of business in Connecticut.  XTRA Corp. and XTRA Intermodal, Inc. are Delaware corporations with their principal places of business in Missouri.  XTRA LLC is a Maine limited liability company whose sole member is a non-party, XTRA Companies, Inc., also a Delaware corporation with its principal place of business in Missouri.  X-L-Co. is a Delaware corporation whose principal place of business the parties dispute.

    **B. Factual and Procedural History**

In 1976, the XTRA companies leased an industrial property in Fairmont, Illinois ("the Site").  The Site was previously owned by the American Zinc Company ("American Zinc") which had used it to conduct zinc smelting operations.  In 1979, the XTRA companies purchased the Site for use in conjunction with their truck leasing business and have owned it ever since.

In the 1990s, federal and state authorities began to investigate the Site and determined that it had been severely polluted by toxic byproducts of American Zinc's smelting operation.  In 2012, the federal Environmental Protection Agency ("the EPA") issued a decision setting forth a long-term remediation plan for the Site.  Substantial litigation has

followed, mostly in the United States District Court for the Southern District of Illinois, the judicial district within which the Site is located.

### i. The Underlying Litigation

In 2013, Blue Tee Corp. ("Blue Tee"), successor to American Zinc, sued the XTRA companies in the Southern District of Illinois seeking contribution for costs that it had incurred, or expected to incur, in remediating the pollution of the Site. That suit was dismissed in January, 2020, after the State of Illinois, the federal government and Blue Tee reached a settlement. The next year, Illinois and the federal government sued the XTRA companies, also in the Southern District of Illinois, for past and future costs related to remediation of the Site. In June, 2021, a consent decree was entered in that lawsuit pursuant to which the XTRA companies were held liable in the amount of approximately $41 million.

### ii. The Coverage Disputes

The underlying litigation has given rise to two related insurance coverage disputes. In what the Court will occasionally refer to as "the Primary Coverage Action", Federal Insurance Company ("Federal"), a primary insurer of the XTRA companies during the relevant period, sued the XTRA companies and several other primary insurers in the United States District Court for the District of Massachusetts, seeking a declaratory

judgment with respect to its liability under the primary insurance policies. The Primary Coverage Action was commenced in 2014 and, in July, 2015, another session of the Court transferred it to the Southern District of Illinois, where it has been stayed pending the conclusion of the underlying litigation.

In October, 2021, First State sued the XTRA companies in the Massachusetts Superior Court for Suffolk County, seeking a declaratory judgment concerning its liability, if any, under the Policies. First State contends that the Policies contain pollution exclusions which apply to preclude coverage. The XTRA companies timely removed the action to this Court and, shortly thereafter, the parties filed the pending motions.

## II. First State's Motion to Remand

First State has moved to remand this action to state court on the grounds that X-L-Co. is a citizen of Massachusetts in that it last conducted business in Boston in 1997. It submits that the forum defendant rule therefore precludes federal jurisdiction. The XTRA companies oppose the motion, contending that X-L-Co. is a citizen of Missouri, not Massachusetts, and that federal jurisdiction exists.

### A. Legal Standard

A defendant may remove a civil lawsuit initiated in state court to the United States District Court for the district where

the state case was filed so long as that court has "original jurisdiction" over the relevant case. 28 U.S.C. § 1441(a). When removal is based on a federal court's diversity jurisdiction under 28 U.S.C. § 1332(a), however, there is an exception to that general rule, i.e. that such actions

> may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

28 U.S.C. § 1441(b)(2). This is known as the forum-defendant rule. See Novak v. Bank of New York Mellon Tr. Co., NA., 783 F.3d 910, n.1 (1st Cir. 2015).

For jurisdictional purposes, a domestic corporation is deemed a citizen of both the state where it is incorporated and the state in which it maintains its principal place of business, 28 U.S.C. § 1332(c)(1), as of the date of the commencement of the lawsuit, see ConnectU LLC v. Zuckerberg, 522 F.3d 82, 91 (1st Cir. 2008). A corporation maintains its principal place of business at its "nerve center," the location from which the corporation's "officers direct, control, and coordinate the corporation's activities." Hertz Corp. v. Friend, 559 U.S. 77, 92-93 (2010). Generally, this will

> be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination...and not simply an office where the corporation holds its board meetings.

Id. at 93.

The party invoking federal jurisdiction bears the burden of persuasion, see Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992), and must support its allegations with "competent proof," Hertz Corp., 559 U.S. at 96-97.

**B. Arguments of the Parties**

The sole disputed issue germane to the question of remand is the principal place of business, if any, of X-L-Co. The relevant facts are undisputed. X-L-Co. was incorporated in Delaware in 1969 and has remained an active corporation there ever since. Between 1969 and 1999, X-L-Co.'s headquarters were in Boston, Massachusetts. Since approximately 1999, X-L-Co. has not been engaged in substantial business activities, although it has not been dissolved, and since approximately 2004, its corporate records, officers and directors have been located in or around St. Louis, Missouri. X-L-Co. has remained a Delaware corporation in good standing with the Delaware Secretary of State, has filed annual tax returns, owns insurance policies and has defended itself in litigation relating to the Site and its insurance policies.

First State asserts that X-L-Co. is an "inactive corporation" and that therefore its principal place of business is where it last conducted business, i.e. Massachusetts. The XTRA companies disagree and stress that application of the

"nerve center" test compels the conclusion that X-L-Co.'s principal place of business is in Missouri.

The "nerve center" test was adopted by the Supreme Court in Hertz Corp., 559 U.S. 77. Prior to that decision, the test was one of several used by the federal courts of appeals in determining the principal place of business of corporate parties. Id. at 89-92. The Supreme Court applied the "nerve center" test to a defendant corporation which engaged in significant amounts of business and did not address whether the test applied similarly to corporations that conducted little or no business. In the absence of a definitive determination of the Supreme Court (or the First Circuit), the parties proffer their own, conflicting answers.

First State argues that the Supreme Court's silence with respect to "inactive" corporations does not affect the pre-Hertz Corp. body of law which, it contends, continues to apply to "inactive" corporations in full force. In support of its position that X-L-Co.'s principal place of business is the last state in which it did substantial business, i.e. Massachusetts, First State cites several cases from other judicial districts within this circuit, chief among them Caribbean Mushroom Co., Inc. v. Government Dev. Bank., P.R. Dev. Fund, 980 F. Supp. 620 (D.P.R. 1997), as well as a case from the Second Circuit, Wm.

Passalacqua Builders v. Resnick Developers S., 933 F.2d 131 (2d Cir. 1991).

The XTRA companies respond that Hertz Corp. makes the "nerve center" test applicable to "active" and "inactive" corporations alike and precludes the complicated, fact-intensive inquiry proposed by First State. They further submit that most of the cases cited by First State, none of which was ever binding on this Court, predated Hertz Corp. and have been superseded by it. Alternatively, the XTRA companies argue that if the Court were to apply a different jurisdictional test for "inactive" corporations, the weight of precedent favors a conclusion that X-L-Co. is not a Massachusetts citizen, citing in support cases from several courts of appeals, including Holston Invs., Inc. v. Lanlogistics, Corp., 677 F.3d 1068 (11th Cir. 2012), a post-Hertz Corp. case from the Eleventh Circuit holding that a dissolved corporation has no principal place of business.

**C. Analysis**

The Court applies the "nerve center" test and concludes that X-L-Co. has its principal place of business in Missouri. In making that determination, the Court finds it significant that X-L-Co. has conducted itself in compliance with corporate formalities and that the directors of X-L-Co. make what few decisions are required of that entity from Missouri. Hertz

-8-

Corp., 559 U.S. at 92-93. Because X-L-Co. is incorporated in Delaware and has its principal place of business in Missouri, it is not a Massachusetts citizen and removal is not thwarted by the forum defendant rule.

Notwithstanding First State's contentions, application of the "nerve center" test to an "inactive" corporation such as X-L-Co. accords with the intent of the Supreme Court to establish "straightforward rules" under which district courts "can readily assure themselves of their power to hear a case." Id. at 94. While Hertz Corp. concerned a defendant corporation which conducted substantial business, the Supreme Court evinced no intention to apply a different test to less active corporations. Rather, the Supreme Court observed that jurisdictional tests focused on "business activities" or "total activities" had proven "unusually difficult to apply". Id. at 90-91. Such difficulty would only be exacerbated where, as here, the ostensibly relevant corporate activity occurred many years, if not decades, in the past.

The Court is thus convinced that it need not examine further X-L-Co.'s level of activity, let alone employ a jurisdictional test tailored to "inactive" corporations. Furthermore, even if it were to do so, it would not find that X-L-Co. was a Massachusetts citizen. Case law concerning citizenship of an "inactive" corporation, most of which predates

Hertz Corp., favors the conclusion that such a corporation is citizen only of its state of incorporation, here Delaware. See, e.g. Holston Invs., 677 F.3d at 1071, Midlantic Nat'l Bank v. Hansen, 48 F.3d 693, 696 (3rd Cir. 1995) (holding that inactive corporation had no principal place of business), Harris v. Black Clawson Co., 961 F.2d 547 (5th Cir. 1992) (applying a "facts and circumstances" test and concluding that a corporation that has been inactive in a state for a substantial period of time does not have its principal place of business there), but see Passalacqua Builders, 933 F.2d at 134 (holding that inactive corporation had principal place of business where it last transacted business). The Court finds the earlier cited opinions persuasive to the extent there exists a jurisdictional distinction between "active" and "inactive" corporations.

Because application of the "nerve center" test compels the conclusion that X-L-Co. is a citizen of Missouri, rather than Massachusetts, First State's motion to remand will be denied.

### III. The XTRA Companies' Motion to Transfer Venue

The XTRA companies have moved pursuant to 28 U.S.C. § 1404(a) to transfer the instant case to the Southern District of Illinois. First State opposes transfer and contends that Massachusetts is the appropriate forum.

**A. Legal Standard**

Section § 1404(a) governs transfer of actions from one federal judicial district to another. It provides that

> [f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]

28 U.S.C. § 1404(a).

When presented with a motion to transfer, the trial court undertakes an "individualized, case-by-case consideration of convenience and fairness", Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988), accounting for factors such as

> (1) the plaintiff's choice of forum, (2) the relative convenience of the parties, (3) the convenience of the witnesses and location of documents, (4) any connection between the forum and the issues, (5) the law to be applied and (6) the state or public interests at stake.

Viatech Tech., Inc. v. Adobe Inc., No. 19-cv-11177, 2020 WL 1235470, at *2 (D. Mass. Mar. 13, 2020). The decision to transfer a case under § 1404 lies within the discretion of the trial court. Astro-Med, Inc. v. Nohon Kohden Am., Inc., 591 F.3d 1, 12 (1st Cir. 2009).

**B. Analysis**

Transfer of this action to the Southern District of Illinois is warranted. As a preliminary matter, the action "might have been brought" in the Southern District of Illinois because subject matter jurisdiction, personal jurisdiction and

venue all are satisfied there. 28 U.S.C. § 1404(a). The XTRA companies have been, and presently are, defendants in litigation in that district concerning the Site and the district court can likewise exercise personal jurisdiction with respect to this action. Because complete diversity exists between the parties and none is a citizen of Illinois, subject matter jurisdiction is proper in the Southern District of Illinois as it is here. Venue lies in the district because the XTRA companies reside there for purposes of the venue statute. 28 USC § 1391(b), (c).

Further, as detailed below, convenience and the interest of justice favor transfer. 28 U.S.C. § 1404(a).

### i. Plaintiff's Choice of Forum

First State has brought suit in Massachusetts. The plaintiff is afforded a presumption in favor of its chosen forum, although the weight to be given to that choice "varies with the circumstances of the case". Brant Point Corp. v. Poetzsch, 671 F. Supp. 2, 5 (D. Mass. 1987). It may be overcome when, for instance, the plaintiff does not bring suit in its home state or "other overriding considerations" exist. Id., see Karmaloop, Inc. v. ODW Logistics, Inc., 931 F. Supp. 2d 288, 290 (D. Mass. 2013). Here, First State is a citizen of Connecticut, not Massachusetts, and, for reasons explained below, the other factors generally favor transfer. Thus, while the first factor weighs against transfer, it does so only slightly.

### ii. Convenience of the Parties

The Court affords little weight to the second factor because the parties are commercial entities equally capable of litigating in Massachusetts or Illinois. While it likely would be somewhat more convenient for First State to litigate in Massachusetts, and for the XTRA companies to litigate in Missouri, neither party has represented that the alternative forum would impose a hardship. Where transfer would merely shift inconvenience from one party to the other, the second factor is neutral. Riemer & Braunstein LLP v. Monroe Capital Mgmt. Advisors LLC, No. 18-12401, 2019 U.S. Dist. LEXIS 82942 at *12 (D. Mass. May 16, 2019).

### iii. Convenience of Witnesses and Location of Evidence

The third factor is the convenience to witnesses and the location of documents. Boateng v. Gen. Dynamics Corp., 460 F. Supp. 2d 270, 275 (D. Mass. 2006). While the development of digital technology has caused the importance of the location of documentary evidence to wane, the convenience of expected witnesses remains "probably the most important factor" bearing upon a motion to transfer. Id. at 275-76, see 15 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 3853 (4th ed.).

Whether witness testimony will be required in this case is uncertain. The XTRA companies assert that, if so, the relevant non-party witnesses would largely be former employees of the XTRA companies, Blue Tee, Illinois state agencies and the federal EPA who would testify as to whether there was "pollution" at the Site the release of which was "sudden and accidental", as those terms are used in the Policies. They aver that the Southern District of Illinois is more convenient for those witnesses. First State disagrees and contends that the witnesses, if any, would be the brokers who drafted the Policies and hypothesizes that those individuals are most likely in Massachusetts.

The Court concludes, to the extent this case involves witness testimony, it will be proffered by individuals with knowledge of "the factual circumstances surrounding the operation and pollution at the Site." Fed. Ins. Co. v. XTRA Intermodal, Inc., No. 14-14010, 2015 U.S. Dist. LEXIS 91992 at *20 (D. Mass. July 15, 2015). The Court agrees with Judge Burroughs who, when considering transfer of the Primary Coverage Action, determined that the Southern District of Illinois would be more convenient for the likely witnesses. Id. That is true here notwithstanding that the Policies provide excess rather than primary insurance. The relevant provisions of the Policies follow the form of the underlying primary policies and therefore

the facts and circumstances germane to the Primary Coverage Action are of similar import. Because the XTRA companies have demonstrated that proceeding in Massachusetts likely will impose a greater inconvenience upon the witnesses than in Illinois, the third factor weighs in favor of transfer.

### iv. Public Interests and Connection between the Forum and the Issues

Considering the fourth and sixth factors together, the Court concludes that they, too, favor transfer. The Policies were drafted in Massachusetts and thus the Commonwealth has some connection to the present litigation. The relationship of Illinois is, however, more significant. Among its connections to this action are the underlying litigation, which took place in Illinois, the Primary Coverage Action, which is pending there, the Site, which lies within its borders and the recovered insurance proceeds, if any, which will fund its remediation. See Fed. Ins. Co. 2015 U.S. Dist. LEXIS 91992 at *26-27 (finding that Illinois possessed a "paramount interest" in the remediation of the Site). Arising from those connections is a significant public interest in the resolution of this dispute. See id.

Massachusetts possesses no similar interest. Rather, the relationship of Massachusetts to this action begins and ends with the negotiation of the Policies in Boston during the 1970s

-15-

and 1980s. The litigation has nothing to do with property or companies presently located in Massachusetts. While First State contends that the interest of the state of contracting outweighs that of the state in which the insured event occurred, the Court disagrees. The multitude of inapposite, out-of-circuit cases cited by First State are unavailing.

### v. Applicable Law

Federal courts are generally considered to be better versed in the law of the state in which they sit than that of another, see Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 n.6 (1981), Karmaloop, 931 F. Supp. 2d at 291, but judicial familiarity with applicable substantive law is given "significantly less weight" where the case involves "basic or well-established, as opposed to complex or unsettled" issues of state law. Wright & Miller, supra, § 3854 (4th ed.), see Fed. Ins. Co. 2015 U.S. Dist. LEXIS 91992 at *25-26.

The parties disagree as to whether the substantive law of Massachusetts or Illinois applies. To resolve that dispute, the Court will apply the choice of law rules of the forum state, i.e. Massachusetts. See Klaxon v. Stentor Elec. Mfg., 313 U.S. 487, 496 (1941). The Commonwealth has adopted a "functional" choice of law approach that responds to the interests of the parties, the states involved and the interstate system as a whole. Bushkin Assocs. v. Raytheon Co., 473 N.E.2d 662, 668

(Mass. 1985). The Court finds it unnecessary, however, to undertake a choice of law analysis because it considers the result to be of little significance to the ultimate issue of transfer. Neither party has argued that the interpretation of a pollution exclusion in an excess insurance party involves matters of Massachusetts law so abstruse that the Court would be compelled to retain the case. Nor could they do so convincingly.

### ORDER

For the foregoing reasons,

1. plaintiff's motion to remand (Docket No. 14) is **DENIED**; and
2. defendant's motion to transfer venue (Docket No. 13) is **ALLOWED**.

**So ordered.**

　　　　　　　　　　　　　　　　　　/s/ Nathaniel M. Gorton　　
　　　　　　　　　　　　　　　　　　Nathaniel M. Gorton
　　　　　　　　　　　　　　　　　　United States District Judge

Dated February 3, 2022