### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **FIRST STATE INSURANCE COMPANY,** | |
| Plaintiff & Counterclaim-Defendant, | |
| **v.** | **Case No. 3:22-CV-216-NJR** |
| **XTRA Intermodal, Inc.; X-L-Co., Inc.; XTRA LLC; & XTRA Corporation,** | |
| Defendants, Crossclaim Defendants, Counterclaim Plaintiffs, & Crossclaim Plaintiffs, | |
| **Associated Indemnity Company; Fireman's Fund Insurance Company, & American Insurance Company,** | |
| Defendants, Crossclaim Defendants, Counterclaim Plaintiffs, & Crossclaim Plaintiffs. | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Defendants Fireman's Fund Insurance Company, American Insurance Company, and Associated Indemnity Company (collectively "FFIC") have filed a Motion to Certify this Court's Choice of Law Order (Doc. 141) for Interlocutory Appeal under 28 U.S.C. § 1292(b). (Doc. 143). Plaintiff and Counterclaim Defendant, First State Insurance Company ("First State"), has joined FFIC's motion to certify (FFIC and First State are collectively referred to as the "Insurers"). (Doc. 147). XTRA Intermodal, Inc., X-L-Co., Inc., XTRA LLC, and XTRA Corporation (collectively the "XTRA Entities"), the insureds

in this matter, take no position on FFIC's motion to certify. (Doc. 153). For the following reasons, the Court grants FFIC's Motion to Certify the Court's Choice of Law Order for Interlocutory Appeal under 28 U.S.C. § 1292(b).

## FACTS

Although the Court presumes familiarity with the facts of this case as explained in its Memorandum and Order on choice of law (the "Choice of Law Order"), it offers some factual context to frame this discussion. This litigation concerns a significant environmental pollution at the Old American Zinc Superfund Site in Fairmont City and Washington Park, located in St. Clair and Madison Counties, Illinois ("OAZ Superfund Site"). X-L-Co. purchased an industrial facility area within the OAZ Superfund Site in 1979 ("OAZ Facility Area"). Over the years, the OAZ Facility Area's operations led to the release of hazardous substances, including lead, cadmium, zinc, arsenic, and manganese into the surface and groundwater of the OAZ Superfund Site.

Federal and state regulators sued X-L-Co. and XTRA Intermodal in March 2021, seeking to recover costs associated with the remediation of the OAZ Superfund Site. In June 2021, a consent decree was entered in the Government's lawsuit against X-L-Co. and XTRA Intermodal, pursuant to which, X-L-Co. and XTRA Intermodal were held liable for response costs and environmental damage in the amount of approximately $41 million. *See United States v. XTRA Intermodal, Inc.*, 3:21-cv-00339-NJR (Doc. 13-1 at 7). The critical issue in this case is whether the XTRA Entities are entitled to insurance coverage under several primary and excess policies that the Insurers issued to them during the late 1970s and early 1980s.

PROCEDURAL BACKGROUND

On August 15, 2022, the Court issued a Scheduling and Discovery Order that trifurcated the proceedings in this case as follows: Choice of Law (Phase 1); Coverage (Phase 2); and Allocation/Exhaustion (Phase 3). (Doc. 96). On March 31, 2023, the parties submitted their respective choice of law motions in connection with Phase 1. The Insurers argued that Massachusetts law applied to this coverage dispute, whereas the XTRA Entities took the position that Illinois law governed. (Docs 125 & 127).

On March 29, 2024, this Court issued the Choice of Law Order finding that Illinois law governed the interpretation of the relevant commercial insurance policies at issue in this litigation. (Doc. 141). The Insurers disagree with the Court's conclusion and contend that because it is "potentially outcome determinative," it is an appropriate candidate for interlocutory review by the United States Court of Appeals for the Seventh Circuit. (Doc. 143 at 3).

DISCUSSION

"Although courts generally oppose interlocutory appeals and only grant them under extraordinary circumstances, courts should not be hostile to appropriate interlocutory appeals when the appropriate conditions are present." *Nat. Res. Def. Counsel v. Ill. Power Res., LLC*, No. 1:13–cv–01181–JBM–TSH, 2016 WL 9650981, at *3 (C.D. Ill. Nov. 2, 2016) (internal citation omitted). A district judge may certify an order for interlocutory review if "such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b);

*see also Martin v. Goodrich Corp.*, 95 F.4th 475, 478 (7th Cir. 2024). Four factors must be met to justify an interlocutory appeal under section 1292(b): "there must be a question of *law*, it must be *controlling*, it must be *contestable*, and its resolution must promise to *speed up* the litigation."[1] *Ahrenholtz v. Bd. of Trustees of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000) (emphases in original). "Unless *all* these criteria are satisfied, the district court may not and should not certify its order to [the court of appeals] for an immediate appeal under section 1292(b)." *Id.* at 676 (emphasis in original). The Court will address each factor sequentially.

### A.  Is there a Question of Law?

A question of law, as used in section 1292(b), concerns "the meaning of a statutory or constitutional provision, regulation, or common law doctrine." *Id.* "The idea [behind section 1292(b)] was that if a case turned on a pure question of law, something the court of appeals could decide quickly and cleanly without having to study the record, the court should be enabled to do so without having to wait till the end of the case." *Id.* at 677. The issue of which state's law governs the interpretation of the insurance policies in this case fits the bill. The Court analyzed the choice of law rules of the Commonwealth of Massachusetts to determine whether the substantive law of Massachusetts or Illinois will apply.[2] This analysis was guided by the Massachusetts Supreme Judicial Court's ("SJC")

---

[1] A party seeking interlocutory appellate review under section 1292(b) must also file its petition "within a *reasonable time* after the order sought to be appealed." *Ahrenholz*, 219 F.3d at 675 (emphasis in original). FFIC filed its petition less than four weeks after the Court issued the Choice of Law Order. The Court finds that such minimal passage of time was reasonable, and the petition was thus timely filed.

[2] As noted in the Choice of Law Order, the Court was bound to apply the choice of law principles of Massachusetts because the case reached this Court by way of a venue transfer under 28 U.S.C. § 1404. *See Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964) (change of venue does not affect choice of law analysis

decision in *Bushkin Assocs., Inc. v. Raytheon Co.*, 473 N.E.2d 662 (Mass. 1985) and its progeny. *Bushkin* embraced a "functional choice-of-law approach" that required this Court to consider several factors that inform a choice of law analysis. *Id.* at 668. Accordingly, the issue concerns "the meaning of a . . . common law doctrine," a question of law under section 1292(b). *See In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 626 (7th Cir. 2010) (collecting cases supporting the proposition that "the application of a legal standard is a controlling question of law within the meaning of section 1292(b)."). Moreover, the need to analyze the choice of law doctrine of the Commonwealth of Massachusetts added a layer of complexity for a district court in this Circuit that further justifies the need for immediate appellate review. *See id.* at 627 (application of newly developed pleading standard "is a further novelty that justifies the conclusion that the appeal presents a genuine question of law.").

  B. <u>Is the Question of Law Controlling?</u>

  The critical issue in this litigation is whether the Insurers are bound to provide coverage to the XTRA Entities for costs associated with an environmental cleanup at the OAZ Superfund Site in Illinois. On this point, a provision in several of the relevant policies known as the "sudden and accidental" coverage exclusion exception plays a central role.[3] The question of which state's substantive law applies greatly affects the interpretation of this exclusion exception because, as noted in the Choice of Law Order,

---

because "[a] change of venue under [§] 1404(a) generally should be, with respect to state law, but a change of courtrooms.").

[3] In broad terms, the policies exclude coverage for environmental pollution, unless the discharge causing the pollution was "sudden and accidental."

"Illinois interprets the exclusion exception more broadly than Massachusetts, meaning that coverage may apply in situations under Illinois law where it would not apply under Massachusetts law." (Doc. 141 at 10).

The question of which state's law applies to this coverage dispute could be dispositive of the case, although the Insurers maintain that coverage is unavailable regardless of the outcome of the choice of law question. (Doc. 143 at 4). Either way, it is not necessary for the question of law to be dispositive for it to be "controlling" under section 1292(b). Indeed, "[a] question of law may be deemed "controlling" if its resolution is quite likely to affect the further course of the litigation, even if not certain to do so." *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656, 659 (7th Cir. 1996). Here, the choice of which state's law applies to the interpretation of the relevant insurance policies will undoubtedly affect the further course of this litigation. If Illinois law applies, then coverage will be available under the "sudden and accidental" exclusion exception, provided the pollution-causing event was "unexpected or unintended." *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1219 (Ill. 1992). If Massachusetts law applies, coverage will only be available if the pollution-causing event was "abrupt" and not "gradual." *Lumbermens Mut. Cas. Co. v. Belleville Indus., Inc.*, 555 N.E.2d 568, 572 (Mass. 1990).

C.  Is the Question of Law Contestable?

Although the Court stands firmly behind its decision in the Choice of Law Order, it acknowledges the contestability of this question of law. The Court concluded that Illinois law applied in this case, in part, because it validated the parties' justified

expectations at the time of contracting. The leading case from the SJC on Massachusetts'
choice of law principles holds that "[w]here relevant contacts and considerations are
balanced, or nearly so, we are inclined to resolve the choice by choosing that law which
would carry out and validate the transaction in accordance with intention, in preference
to a law that would tend to defeat it." *Bushkin*, 473 N.E.2d at 671 (internal quotation marks
omitted). The Court examined the history of decisional authority from Massachusetts
interpreting the "sudden and accidental" exclusion exception and found that Illinois law
was more closely aligned with the parties' expectations of coverage at the time of
contracting. Accordingly, the Court concluded that the application of Illinois law would
validate the parties' justified expectations more effectively than the law of Massachusetts
would.

FFIC disagrees with the Court's analysis based, in part, on the Massachusetts
Appeals Court's decision in *OneBeacon America Ins. Co. v. Narragansett Elec. Co.*, 57 N.E.3d
18 (Mass. App. Ct. 2016). There, an environmental contamination in Rhode Island was
the subject of an insurance coverage dispute in Massachusetts state court. *Id.* at 24. After
conducting a choice of law analysis under *Bushkin*, the court found that it was the
insureds' intention to obtain "uniformity of coverage, so that the operations of multiple
companies were insured as a single risk under a single policy." *Id.* at 24. As such,
*OneBeacon* applied Massachusetts law even though the environmental pollution occurred
in Rhode Island.[4] *Id.* at 21, 25. FFIC argues that here too, the focus of the inquiry regarding

---

[4] Four of the five insured companies in *OneBeacon* were "located in Massachusetts." *OneBeacon*, 57 N.E.3d
at 22.

the parties' justified expectations should be based on the goal of obtaining "uniformity of coverage," not based on the parties' understanding of the scope of coverage at the time of contracting.

Reasonable minds can certainly differ on the issue of the parties' justified expectations at the time of contracting, and FFIC has cited cases that emphasize the principle of "uniformity of coverage" as a critical factor in the evaluation of this consideration. But for the reasons articulated in the Choice of Law Order, the Court doubts that "uniformity of coverage" should be the dispositive tiebreaker here, much less that the "uniformity of coverage" consideration would even support the application of Massachusetts law under *Bushkin* and the relevant Restatement provisions. *See e.g.*, *A. Johnson & Co., Inc. v. Aetna Cas. & Sur. Co.*, 741 F. Supp. 298, 301-02 (D. Mass. 1990) (applying Massachusetts choice of law principles and finding that "the justified expectations of the parties to the insurance contract, in this particular area, suggest that the jurisdiction of impact should govern the choice of law issue."), *aff'd*, 933 F.2d 66 (1st Cir. 1991).

At the very least, the critical interpretative question here provides grounds for disagreement. That is sufficient to render it "contestable" under section 1292(b). *See Thompson v. Burnett*, No. 1:15-cv-01712-TWP-DML, 2017 WL 6606536, at *2 (S.D. Ind. Dec. 27, 2017) ("When considering contestability, courts examine the strength of the arguments in opposition to the challenged ruling, which includes examining whether other courts have adopted conflicting positions regarding the issue of law proposed for certification") (internal quotation marks omitted).

D.  <u>Will the Question's Resolution speed up the Litigation?</u>

The final consideration under section 1292(b) addresses the question of whether an interlocutory appeal would "promise to *speed up* the litigation." *Ahrenholz*, 219 F.3d at 675 (emphasis in original). The Court agrees with FFIC that this factor is met. If the Seventh Circuit concludes that this Court's choice of law decision is wrong, an immediate appeal would avoid the undesirable scenario in which the parties litigate Phases 2 and 3 of this litigation (coverage and allocation/exhaustion respectively) under an incorrect legal framework. Indeed, if an appeal *after final judgment* reveals that the Court incorrectly applied Illinois law, the parties would effectively be required to litigate Phases 2 and 3 twice. As such, the Court concludes that an interlocutory appeal would "head off protracted, costly litigation."[5] *Id.* at 677.

---

[5] Although the Court finds that an interlocutory appeal under 28 U.S.C. § 1292(b) is appropriate in this case, it does not reach this conclusion without reservation. In *Freeman v. Kohl & Vick Mach. Works, Inc.*, 673 F.2d 196, 201 (7th Cir. 1982), the Seventh Circuit dismissed an appeal for lack of jurisdiction, in part because a contested conflict of law determination "involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action," and the case had not yet reached final judgment (internal quotation marks omitted). For that reason, *Freeman* explained that "the making of a conflict of laws determination . . . is subject to effective review *after final judgment*." *Id.* (emphasis added). Thirteen years later, the Seventh Circuit reaffirmed *Freeman*'s holding on this issue and concluded that "one may not bring an interlocutory appeal of a district court's choice of law determination." *Gramercy Mills, Inc. v. Wolens*, 63 F.3d 569, 571 (7th Cir. 1995). And, in *Orion Sales, Inc. v. Emerson Radio Corp.*, the court held that a choice of law determination "may not be the subject of an interlocutory appeal" under the collateral order doctrine. 148 F.3d 840, 842 (7th Cir. 1998). The Court requested additional briefing from FFIC on these authorities (Doc. 154) to which FFIC responded by declaring them "not relevant" to the certification question at issue here. (Doc. 155 at 2). FFIC reasoned that *Freeman*, *Gramercy Mills*, and *Orion Sales* all sought appellate jurisdiction under the collateral order doctrine, not under section 1292(b). The Court partially agrees. *Freeman* recognized the distinctiveness of the two avenues to interlocutory appeal but noted that even if the appellant had sought certification of the choice of law issue under section 1292(b), that option "would have been of no avail" because the appellant "made no colorable claim that the harm it might suffer if forced to await the final outcome of the litigation before appealing the denial of its summary judgment motion, which was based on conflict of laws determination, is any greater than the harm suffered by any litigant forced to wait until termination of the trial before challenging interlocutory orders it considers erroneous." *Freeman*, 673 F.2d at 201 n.13. As such, the Court does not agree with FFIC's characterization of these authorities as irrelevant. But unlike the appellant in *Freeman*, FFIC has persuasively argued that the circumstances of this case warrant certification under section 1292(b) and that delaying appellate review

CONCLUSION

For these reasons, FFIC's motion to certify the choice of law question for interlocutory review under 28 U.S.C. § 1292(b) (Doc. 143) is granted. The Court certifies the following question for appellate review:

**Whether, under the choice of law rules of Massachusetts, the insurance policies at issue in this litigation are governed by the substantive law of Illinois or Massachusetts.**

**IT IS SO ORDERED.**

**DATED:  June 3, 2024**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

---

could risk forcing the parties to engage in time-consuming and costly litigation under an incorrect legal framework. For that reason, the Court grants FFIC's motion for certification, mindful of *Freeman*, *Gramercy Mills*, and *Orion Sales*, which, at the very least, require district courts to give a certification request under section 1292(b) careful thought when the disputed issue concerns a choice of law determination.